Avon M. HARRELL, Independent Executrix of the Estate of William E. Harrell, Deceased, Appellant,

v.

CONTINENTAL ASSURANCE COMPANY OF CHICAGO, ILLINOIS, Appellee.

No. 11216.

Court of Civil Appeals of Texas.

Austin.

June 24, 1964.

**224**

Cofer, Cofer & Hearne, Austin, for appellant.

Brown, Sparks & Erwin, Will G. Barber, Austin, for appellee.

HUGHES, Justice.

Avon M. Harrell, Independent Executrix of the Estate of William E. Harrell, deceased, brought this suit against Continental Assurance Company of Chicago, Illinois, appellee, to recover on a policy of credit life insurance issued by appellee to the Government Employees Credit Union of Austin, Texas. Trial to the Court without a jury resulted in judgment for appellee.

The insurance policy sued on and which was in force at the date of death of William E. Harrell, provided, in part, as follows:

"CONTINENTAL
ASSURANCE COMPANY

Home Office
Chicago, Illinois

(herein called the Company)

hereby agrees that immediately upon receipt of due proofs of the death of any Debtor of

GOVERNMENT EMPLOYEES CREDIT UNION
AUSTIN, TEXAS

(herein called the Creditor)

DEATH
BENEFIT
as shall be insured hereunder at the time of such death it will pay to the Creditor the amount of insurance in force hereunder on the life of such Debtor at the time of such death, and such payment to the Creditor shall be applied by the Creditor to reduce or extinguish the unpaid indebtedness of the Debtor to the extent of such payment.

AMOUNT OF INSURANCE  The amount of insurance hereunder on the life of any such Debtor, at any time, shall be the amount of the Debtor's then indebtedness to the Creditor of the kind described in the application for this policy, provided, however, that such insurance shall in no case exceed

Five Thousand ($5,000.00) and 00/100 ——————————
[Stamped: TEX MAR 1957 JET]            Dollars.

CONSIDER-ATION  This policy is issued in consideration of the application of the Creditor, which application is hereby made a part of this contract and a copy of which is attached hereto, and of the payment by the Creditor of all premiums when they fall due, as hereinafter provided."

———◆———

The application, referred to in and made a part of the policy, provides in part:

"Application is hereby made to the Continental Assurance Company, Chicago, Illinois, (herein called the Company) for Group Life Insurance upon the one year renewable term plan on the lives of the Debtors, as hereinafter defined, of Government Employees Credit Union of Austin, Texas (herein called the Creditor) with P. O. address: P. O. Box 250, Austin, Texas
The nature of Creditor's business is savings and loan association

INSURANCE COVERAGE:

Debtors and kind of Indebtedness to be covered are the following:—

All individuals, now indebted, or who hereafter become indebted, to the Creditor by reason of their borrowing from the Creditor under a written Contract of indebtedness wherein they agree to repay such indebtedness as per the terms of the Contract.

*Insurance is to be granted only on the life of the individual debtor whose signature appears first on the Contract of indebtedness. No insurance is to be effective hereunder on the lives of co-makers, co-signers, endorsers or guarantors.* (Italics added.)

Insurance is to be effective hereunder on the lives of individual debtors whose indebtedness has been 'charged off' by the creditor, not to exceed four (4) years after the original maturity date of such indebtedness.

Amount of insurance on the life of any Debtor at any time shall be the amount of the Debtor's indebtedness to the Creditor at such time, provided, however, that such insurance shall in no case exceed $5,000.00 Dollars."

———◆———

At all times material to this suit, Mrs. Avon M. Harrell was a member of the Government Employees Credit Union and was an employee of the Federal Government.

At all times material to this suit, William E. Harrell was not an employee of the Federal Government and he was never a member of Government Employees Credit Union.

All of the instruments signed by Mr. and Mrs. Harrell, or either of them, regarding loans from the Government Employees Credit Union and the dates and manner of

their execution are shown on an exhibit prepared by appellee which we believe will aid in understanding the transactions involved. We reproduce it:

"DOCUMENTS SIGNED BY HARRELLS

| Date | Credit Union Form 63–R Loan Application | Credit Union Form 60–M Promissory Note | Deed of Trust Notes With Deeds of Trust |
|------|------|------|------|
| 1957 | Amount: $4,000.00 Signed: Only by Mrs. H. | Amount: $4,000.00 Signed: (1) By Mr. H. as 'Maker' (2) By Mrs. H. as 'Co-Maker' | Amount: $4,000.00 Signed: (1) By Mr. H. (2) By Mrs. H. |
| 1959 | Amount: $6,300.00 Signed: Only by Mrs. H. | Amount: $6,300.00 Signed: (1) By Mrs. H. as 'Maker' (2) By Mr. H. as 'Co-maker' | Amount: $6,300.00 Signed: (1) By Mr. H. (2) By Mrs. H. |
| 1960 | Amount: $5,761.00 Signed: Only by Mrs. H. | Amount: $5,761.00 Signed: (1) By Mrs. H. as 'Maker' (2) By Mr. H. as 'Co-maker' | |
| | Amount: $5,585.44 Signed: Only by Mrs. H. | Amount: $5,585.44 Signed: (1) By Mrs. H. as 'Maker' (2) By Mr. H. as 'Co-maker' | |

"

The original loan in 1957 was for $4,000.00.

The 1959 loan was in renewal and extension of the balance due on the 1957 loan, $2,503.00 and an additional loan of $3,797.00, for which a note for $6,300.00 was executed by the Harrells. No other additional money was borrowed by the Harrells from the Credit Union and all subsequent notes were in renewal and extension of the balance due.

Mr. William E. Harrell died June 2, 1962. On this date the current, or last, loan instruments executed by the Harrells were (1) the 1961 Credit Union Loan Application (2) 1961 promissory note (3) 1959 Deed of Trust and Deed of Trust note. There were also in effect on this date the

original 1957 Deed of Trust Note and Deed of Trust for such purposes as might be required to protect subsequent renewals of the original debt. We copy, in full, the 1961 loan application and note:

## "GOVERNMENT EMPLOYEES CREDIT UNION
### CREDIT UNION

APPLICATION FOR LOAN            Account No. 103

Soc. Sec. No. ———————                         Oct. 28  1961

I hereby apply for a loan of  Fifty five hundred eighty five & 44/100  dollars, for a period of  12  months, to be repaid in  one  ~~weeks~~ ~~weekly~~ ~~semi-monthly~~) installments ~~monthly~~ of  $5585.44  dollars each.

I desire this loan for the following provident or productive purpose:—

_____ Renew note _____

Names of co-makers  ——— ——————————————

Security  shares 55   $\frac{64}{}$   v lost

I am not indebted to any other credit union, bank or loan agency either as maker or endorser, except as stated on the reverse side hereof. The statements herein are made for the purpose of obtaining the loan, and are true to the best of my knowledge and belief.

Avon M. Harrell _____           2515 Quarry Rd  "
___Signature of Applicant___                  ___Address___

"$5585.44                                     Book No. 103
Terms  in full

Date Due Oct 28, 1962                         Oct 28  ,  1961
     12      months after date, for value received, we  Avon M. Harrell
as principal, and  W. E. Harrell  and  _____  as co-makers, waiving our rights of demand and notice, jointly and severally promise to pay to the GOVERNMENT EMPLOYEES      CREDIT UNION, or order, the sum of Fifty-five hundred eighty-five—and  44      dollars
                              100
with interest on unpaid balance  from date , at the rate of  ¾ of 1    per cent, per month, payable in  one  installments of  fifty-five hundred eighty-five and     44     dollars;
        100
the first payment to be made on   October 28, 1962 _____

[Paid 8-7-63 GOVERNMENT EMPLOYEES CREDIT UNION
     D. D. Batton]
and a like amount every_____thereafter until the full amount has been paid.
Collateral :   shares & lots _____

In case of any default in payments as herein agreed, unless excused by the Board of Directors, the entire balance of this note shall become immediately due and payable. We hereby pledge all paid shares, payments on shares, or deposits, which we now have or hereafter may have in this Credit Union, for loans, interest, fines, costs or expenses, and we hereby authorize the Treasurer to apply any or all such paid shares, payments on shares, or deposits to the payment of said loans, interest, fines, costs or expenses.

Said principal and co-makers, jointly and severally, promise to pay, while in default, a fine of ————— cents on each unpaid dollar per month until all arrears are paid, together with all costs or expenses incurred in the collection of any sum due.

Also, if the holder hereof, after default, and after written notice to the maker of this note of his intention so to do, shall place this note in the hands of an attorney for collection, the maker agrees to pay an additional sum as a fee for collection equal to twenty per cent of the balance of the principal of the note which remains due and unpaid after there has been credited against said balance the combined share and deposit accounts of the maker of the note in the Credit Union and after there has also been applied in reduction of principal such sums if any as may be realized from the sale of any other security in the possession of the Credit Union which is being held as collateral against the loan, such charge for collection in no event to be less than five dollars.

| WITNESS | | NAME | ADDRESS |
|---------|---------|------|---------|
| Doris Dees | Maker | Avon M. Harrell | (Seal) 2515 Quarry Rd |
| Doris Dees | Co-maker | W. E. Harrell | (Seal) " " " " |

————◆————

Appellants asserts, with ample authority, that the 1960 and 1961 renewal notes given by the Harrells did not extinguish the 1957 and 1959 notes. Fortified by this legal position appellant points out that the policy does not distinguish between original contracts of indebtedness and renewal and extension of contracts of indebtedness. This, too, is true. These preliminary positions, while correct, do not squarely meet the issue as to who was insured, Mr. Harrell or Mrs. Harrell.

■ Appellant makes no contention that both of the Harrells were insured. She bases her position that Mr. Harrell and not she was insured upon the sound and well established rule that a policy of insurance susceptible of more than one construction should be interpreted against the insurer and favorably to the insured. We quote her argument in this respect:

"In our case at bar, we had two classes of 'contracts of indebtedness', (1) the $4,000.00 and $6,300.00 notes given when the money was originally borrowed and which were executed on the first line by William E. Harrell as the principal maker; and (2) the 1960 and 1961 renewal and extension notes of those original contracts of indebtedness which were signed on the first line by Mrs. Harrell. The trial court, in a situation in which the broad terms of the policy referred simply to 'a contract of indebteness' and was capable of two constructions—the original, unreleased unextinguished notes—or the renewal and extension notes, chose a construction strictly against the insured and in favor of the insurer so as to completely defeat coverage."

■ In evaluating this argument, that this policy is susceptible of two constructions, it is proper to look to all relevant facts and circumstances.

The insurance policy sued on is subject to the provisions of Art. 3.50, Texas Insurance Code, under which credit insurance may be written for eligible debtors who are "members" of a defined group. It was stipulated that Mr. Harrell was not an employee of the Federal Government and was not a "member" of the Credit Union. He was not eligible for insurance under the provisions of the statute authorizing the issuance of the policy in suit.

Other circumstances are these: The form 60–M note is used and required by the Credit Union for all loans made by it. It is the note that is numbered and entered upon the Credit Union's permanent records. It is the note used by the Texas Banking Department in examining the books and records of the union. It is the only note executed by the Harrells which designates them as "maker" and "co-maker." It is the only instrument in the record which unequivocally shows on its face who is and who is not insured under the terms of the policy in suit.

The record also discloses that before either Mr. or Mrs. Harrell signed the 1961 Credit Union form 60–M note the secretary-treasurer of the union advised the Harrells that whoever signed the first line on that note as maker would be the only person insured and that thereafter the note was signed as shown.[1]

We hold that all the facts and circumstances lead to one, and only one, ineluctable conclusion: Mrs. Harrell was the insured.

One supreme test may be made to prove the validity of this conclusion. Suppose, Mrs. Harrell had succumbed, the record being otherwise exactly as here, and the insurance company was defending on the ground that Mr. Harrell was the insured, making the identical argument appellant is making, what would be our decision? Mrs. Harrell would have met all the statutory requirements. She would have complied literally with all the provisions of the policy. There simply would be no reason which could be assigned for denying recovery had she been the decedent. Since only one life was insured, the validity of the insurance as to Mrs. Harrell establishes its invalidity as to Mr. Harrell.

The judgment of the Trial Court is affirmed.

Affirmed.

---

1. The testimony is in conflict on this point but the Trial Court by express findings resolved the conflict in favor of appellee. Appellant objects to the use of this finding on the ground that the policy provides that, "No statement by any person insured will be used to contest any claim thereunder." We reject this objection for two reasons, (1) no statement by Mr. Harrell, the claimed insured, is employed (2) the finding is not used to contest a claim of the insured, but to help determine who is insured, Mr. Harrell or Mrs. Harrell. Our decision herein, however, would be the same absent this finding and the evidence supporting it.